Dixon v. State.

ARTHUR J. DIXON V. STATE OF NEBRASKA.

FILED NOVEMBER 7, 1895. No. 6826.

1. **Criminal Law**: CONVICTION ON CIRCUMSTANTIAL EVIDENCE. In criminal cases, as in civil, facts may be established by circumstances as well as by direct evidence, and a verdict of guilty

Dixon v. State.

is supported by the evidence when the circumstances proved
lead beyond a reasonable doubt to inferences of the facts essential
to establish the defendant's guilt.

2. Witnesses: CREDIBILITY. The fact that a witness testified dif-
ferently in the preliminary examination and on the trial does
not require that her testimony on the trial shall be rejected.
Her credibility is for the jury.

3. Accessories. Sections 1 and 2 of the Criminal Code; so far as
they define accessories, are declaratory of the common law.
One who is present when the crime is committed, aiding and
assisting therein, is, notwithstanding these sections, a principal,
although his hand was not the instrument through which the
crime was perpetrated.

4. Abortionists: EVIDENCE. A defendant in a prosecution for
producing an abortion having testified in chief that his acquaint-
ance with the woman on whom the operation was performed was
not intimate, it was material and proper cross-examination to
show by him that he had been criminally intimate with her.

5. Criminal Law: INSTRUCTIONS. While it is the better practice
in a criminal case for the trial court to charge the jury in con-
cise and informal language what facts are essential to warrant
a conviction, the defendant cannot complain if the court charges
the jury in the language of the information that all the allega-
tions thereof are material, no technical or ambiguous language
being used.

6. ———: ———: REPETITIONS: HARMLESS ERROR. The repeti-
tion of a proposition of law in instructions is not reversible error
where it has not been of such a character as to prejudice the
rights of the accused.

7. Right of Prosecuting Attorney to Request Instruc-
tions. A prosecuting attorney has the same right as counsel
in a civil action to request instructions, and instructions given
at the request of counsel are entitled to the same weight as in-
structions given by the court of its own motion.

8. Continuance. Where a continuance is asked for the purpose of
meeting evidence unexpectedly adduced by the other party, it
must, among other things, be shown that the party seeking the
continuance expects to procure evidence to meet the new feat-
ures, and the nature of such evidence.

9. Arguments of Counsel: LIMITATION BY COURT: REVIEW.
It is within the discretion of the trial court to limit the time for
arguments to the jury, and an order so limiting time presents

no question for review, unless it is made to appear that the arguments were thereby unduly restricted and that the time allotted to the complaining party was consumed.

ERROR to the district court for York county. Tried below before BATES, J.

*George B. France* and *Charles H. Sloan,* for plaintiff in error.

*A. S. Churchill, Attorney General, George A. Day, Deputy Attorney General,* and *N. V. Harlan,* for the state.

IRVINE, C.

The plaintiff in error was convicted on an information charging him under section 6, Criminal Code, of having in York county on the 22d day of June, 1893, employed in and upon the body and womb of a woman named in the information a certain instrument with intent unlawfully, willfully, and feloniously to destroy a vitalized embryo— in other words, of producing an abortion. ·Several of the assignments of error go in effect to the sufficiency of the evidence, and by considering this question here a detailed consideration of some other assignments will be rendered unnecessary. The statute under which the information was drawn is as follows:

"Section 6. Any physician or other person who shall administer, or advise to be administered, to any pregnant woman with a vitalized embryo, or fœtus, at any stage of utero-gestation, any medicine, drug, or substance whatever, or who shall use or employ, or advise to be used or employed, any instrument or other means with intent thereby to destroy such vitalized embryo, or fœtus, unless the same shall have been necessary to preserve the life of the mother or shall have been advised by two physicians to be necessary for such purpose, shall in case of the death of such vitalized embryo, or fœtus, or mother, in consequence thereof,

shall be imprisoned in the penitentiary not less than one nor more than ten years."

It is contended that the evidence was insufficient to prove that the embryo was vitalized; that the operation was not necessary to save the life of the mother, or that it was not advised by two physicians to be necessary for that purpose; and further, that there was no evidence that the defendant committed the act.

The first two objections may be considered together. The evidence tended to show that the mother had been criminally intimate with the defendant; that she became pregnant and informed the defendant of that fact; that he had endeavored to induce her to take drugs for the purpose of producing an abortion, and at one time, at least, left with her an instrument which he endeavored to have her use for that purpose; that she had until after the occurrence of this incident been employed at a hotel in Lushton. She left that employment and went to the home of her mother and step-father, where on the night of June 21 she was visited by the defendant, who then informed her that he had procured a physician to perform an operation for the purpose of producing an abortion, and arranged with her to take her out on the following evening, ostensibly to a dance but really for the purpose of having the operation performed. The following evening he came between 8 and 9 o'clock, and it was announced to the girl's mother that on account of the lateness of the hour they would not go to the dance, but would go driving together. They drove away together in a buggy, entered the town of Lushton, drove to the house of the physician, who joined them in the buggy, and the three drove into the country to a point along the railway track where they stopped and dismounted. The defendant took the horses and buggy across the railroad track, and stood there, having declared it his intention to keep a lookout against interruption, while the physician introduced the instrument for the purpose of producing an

abortion, and which did have that effect. The girl's health
had to this time been good and there was evidence tending
to show that the fœtus, when born, was well developed.
This was sufficient to justify a finding that it was alive,
or vitalized, especially in view of the expert testimony
which was introduced. There is no occasion in the case to
enter into a discussion of the burden of proof of the excep-
tions of the statute. The information charged that this act
was not within the exceptions. Assuming under the gen-
eral rule of criminal procedure that the burden was upon
the state to establish every element of the offense beyond
a reasonable doubt, and beyond a reasonable doubt to
exclude these exceptions, there was evidence sufficient
to exclude them. Such evidence was not necessarily by
direct testimony *in totidem verbis* of the fact that the
operation was not necessary to save the life of the mother,
and that it had not been advised by two physicians as
necessary for that purpose. In the contemplation of
law jurors are sane men capable of drawing inferences
while sitting as jurors such as sane and reasonable men
draw under other circumstances. They must believe as
jurors what they believe as men, and they cannot disbe-
lieve as jurors what as men they believe. The only dis-
tinction arising from their position is that as jurors their
inferences must be drawn from the evidence in the case and
not from extraneous circumstances beyond the evidence.
There is affirmative evidence in this case that the woman
in question had never been advised that such an act was
necessary to preserve her life. There is evidence that down
to the time of this event she was a woman of at least ordi-
narily good health. From these facts and from the other
circumstances which the evidence tended to prove, if the
direct evidence was to be believed, it was not only a fair in-
ference but it was an absolutely necessary inference that the
mother's life was not in danger and that the object of per-
forming the operation was not to save her life but to pre-

vent the birth of a child and to avoid disgrace. The inference was equally strong that no such operation had been advised by physicians in any number as necessary to save her life.

On the question as to whether the defendant performed the operation there are presented for consideration matters both of fact and of law. It appears from the evidence that on the preliminary examination of the defendant the girl had testified that the defendant himself had introduced the instrument and committed the act complained of. On the trial she testified, as heretofore outlined, that the physician had manipulated the instrument, the defendant withdrawing across the railroad track and keeping a lookout. It is argued that under the circumstances her testimony was not entitled to credence. This was a question for the jury. She gave as a reason for changing her testimony that on the way from Lushton to the place where the act was committed she had been cautioned by the defendant, in the physician's presence, that the defendant had agreed to shield the physician, and that if anything happened the whole responsibility was to be placed upon the defendant, and the physician's connection with the case concealed. She thus accounted for her testimony on the preliminary examination, but claimed that she was induced to testify otherwise on the trial by the reproaches of her own conscience and the advice of counsel for the state. Considering the difficulty of her situation this was a plausible explanation. The district judge carefully instructed the jury as to the caution required in weighing her testimony under the circumstances, and the necessity of corroboration. It was for the jury and not for the district judge or for this court to determine whether her testimony on the trial was entitled to belief, and under the circumstances the jury was justified in believing it. As to the matter of law, it is here argued that under an information charging the defendant himself with performing the operation a conviction can

not be sustained upon the evidence of the mother at the trial—that is, that the state, to prove the offense charged in the information, must show that the defendant himself performed the act. Section 1 of the Criminal Code provides that if any person shall aid, abet, or procure another person to commit a felony, the person offending shall be punished in like manner as the principal; and section 2 defines an accessory after the fact as one who, "after full knowledge that a felony has been committed, conceals it from the magistrate, or harbors and protects the person charged with or found guilty of the crime." These sections, so far as defining offenses are concerned, are but declaratory of the common law, and do not refer to one who is present when the crime is committed, aiding and abetting the commission thereof. Such a person, at common law and under the Code, is a principal and may be indicted and convicted as such under evidence proving his presence aiding the commission of the crime, although his hand was not the instrument of its perpetration. (*Hill v. State*, 42 Neb., 503; *Walrath v. State*, 8 Neb., 80.)

It is contended in the briefs that several rulings on the admission of evidence were erroneous. Only one is assigned in the petition in error. On the cross-examination of the defendant the state was permitted to prove that a short time before the offense was committed, and well within the period of gestation, defendant had had sexual intercourse with the mother. It is argued that this evidence was incompetent and not proper cross-examination. It was competent, and material at least to show a motive. We need not enlarge on this. It was proper cross-examination, if for no other reason, because in the direct examination the defendant had testified that he had become acquainted with the girl and taken her to a few parties. The evident effect of the direct examination was to show that the acquaintanceship was not very intimate and rather casual. Under such relations the commission of the offense

would be much less probable than under relations of criminal intimacy, and it was entirely relevant to the direct examination to establish the latter fact.

The court in the first instruction given said: "The jury are instructed that the defendant is informed against as required by law, and that the material allegations of the information are as follows;" then, as a part of the same instruction, quoted the whole information, omitting merely the formal commencement and conclusion. This is substantially repeated in the sixth instruction, and the giving of each instruction is assigned as error on the ground that it was the duty of the court to instruct the jury concisely what the material allegations were, or, in other words, what elements it was essential that the state should prove. Where informations involve technical language, or where they contain immaterial allegations, it is no doubt better for the court to eliminate what is immaterial and to avoid technicalities by stating to the jury in concise and unambiguous language the elements necessary to constitute the offense; but this information involved no technical or ambiguous language, and the defendant certainly has nothing to complain of in the fact that the court in effect told the jury that every allegation was material and must be proved by the state. The instruction which was given not only contained within itself every element necessary to the offense, but by plain inference at least it told the jury what the instruction on this subject requested by the defendant omitted—that the state must also prove that the operation was not necessary to save the life of the mother, and that it had not been advised as necessary for that purpose by two physicians.

The fifth instruction given by the court is attacked solely for the reason that it repeated a caution that the jury in weighing the credibility of the witnesses should consider the interest of the defendant in the prosecution. The question thus presented has been several times recently

considered, and it has been held, following prior decisions, that where such repetition has not been of such a character as to prejudice the rights of the accused, it is not reversible error. (*Hill v. State,* 42 Neb., 503; *Carleton v. State,* 43 Neb., 373.) This case falls within the rule stated.

At the request of the state the court charged the jury that if the act complained of had been committed in pursuance of a previous arrangement and agreement between the defendant and the physician that the same should be committed and the physician, in pursuance of such agreement and arrangement, employed the instrument, and Dixon was then and there present watching to prevent surprise, or in any other way to assist in the commission of the act, then he would be responsible as though he himself had used the instrument. So far as this instruction involves a question of law, it has already been considered in connection with the sufficiency of the evidence. But it is also argued that there was no evidence whereon to found it. There was, however, evidence tending to show that the defendant told the girl the evening before the crime that he had arranged to have this particular physician commit it; that he drove the girl into town and the physician entered the buggy with them; that on the way to the place where the crime was committed the matter was talked over among them, the conversation indicating that there was an understanding between defendant and the physician on the subject. This was certainly sufficient foundation in the evidence for the instruction.

The court gave the following instruction : "Instructions asked and given by the court upon the motion of the state, or upon the motion or request of the defendant, should have the same weight with the jury, and the jury should be guided thereby just the same as if given by the court." It is argued that in a criminal case the prosecuting attorney has no right to request instructions, and that, therefore, this instruction should not have been given. We know

no principle of law, of no statute, and of no consideration of policy which prevents the prosecuting attorney in a criminal case from submitting to the court a request for any instruction which he thinks well founded in law and applicable to the evidence. A prosecuting attorney, with proper sense of his duty, stands, of course, not entirely in the attitude of counsel in a civil action. It is his duty to enforce the criminal law. It is not his duty to procure a wrong determination of questions of criminal law or to urge a wrongful conviction. It is not the duty of counsel even in civil cases to endeavor to procure a distortion of the law, but a prosecuting attorney may, owing to his independent position, be expected to exercise a more dispassionate judgment and assume a less partisan attitude; but he has the right, and it is his duty, to request such instructions as he believes present the principles of law applicable to the evidence, and having requested them the court in giving them adopts such instructions as its own. Instructions given at the request of counsel should have the same, no less and no more, force than instructions given by the court of its own motion and it is not error to so tell the jury.

The prosecuting attorney, with commendable candor, stated in opening the case the effect of the mother's testimony on the preliminary examination, and the fact that she would on the trial testify differently. Thereupon the defendant requested a continuance to meet the case as then disclosed. This application was refused. In the showing made it was not disclosed in what respect the defense expected to be able to meet the new phase of the evidence or the names of the witnesses by whom it was to be met. In order to procure a continuance it should be shown that the party seeking the continuance expects to be able to procure material testimony, and the nature of such testimony. This not being shown, there was no error in refusing the continuance. When both sides had rested the court made an

·order giving to the state forty minutes to open its case and ·fifty minutes to close, and to the defense, to one counsel ·sixty minutes and to the other counsel forty.   This limi-·tation and distribution of time was excepted to.   This ·was a matter within the discretion of the trial court.   It ·is not shown that the argument was unduly restricted, and ·it is not shown that even the time allotted to defendant ·was consumed.   Under such circumstances there is no error ·apparent. (*Hart v. State*, 14 Neb., 572.)

JUDGMENT AFFIRMED.