BOB WILLIAMS V. STATE OF NEBRASKA.

FILED JUNE 12, 1912. No. 17,509.

1. Criminal Law: PRINCIPALS. Where one is personally present at the time of the commission of an offense, under such circumstances as to leave no doubt that his purpose was to participate in the act should occasion require, he should be held as a principal in the crime.

2. Robbery: EVIDENCE. The evidence is examined, the facts set out in the opinion, and *held* sufficient to warrant a verdict of guilty.

3. Criminal Law: INDETERMINATE SENTENCE ACT: CONSTITUTIONALITY. The indeterminate sentence law of this state is not unconstitutional.

ERROR to the district court for Douglas county: GEORGE A. DAY, JUDGE. *Affirmed.*

*Charles Haffke,* for plaintiff in error.

*Grant G. Martin, Attorney General,* and *Frank E. Edgerton, contra.*

REESE, C. J.

An information was filed in the district court accusing plaintiff in error of the crime of robbery, the charge being that he robbed one Earl W. Spencer of the sum of $17.60 by an assault and putting him in fear of bodily violence. A jury trial was had, which resulted in a verdict finding plaintiff in error guilty, and he was sentenced to the indeterminate term of from three years to fifteen years in the penitentiary. He brings the cause to this court for review by proceedings in error.

There are three principal errors assigned: First, that the evidence is insufficient to sustain the verdict; second, that the court erred in instructions; and, third, that the law providing for the indeterminate sentence is unconstitutional and void, and, if sentenced at all, the judgment should have been for a fixed and determined length of time.

As to the first contention, there is practically no conflict in the evidence. The alleged facts as to the robbery and the presence of plaintiff in error, whom we will hereafter refer to as defendant, at the scene of the commission of the offense is not denied. The crime was committed after midnight, or early morning, of December 2, 1911. The person robbed was the toll-gate keeper at the west end of the bridge for general travel across the Missouri river in the city of Omaha. From the undisputed evidence it appears that defendant boarded a street car on the Iowa side and was transported to Omaha, arriving at the west end of the bridge about the hour of 1 o'clock and 30 minutes on the morning of the robbery, which occurred at about 20 minutes after 2. When the car reached Eleventh street, which is the second street west

of the west end of the bridge, he left the car. Another man, who is referred to in the evidence as "the white man," left the car at the same time, both going in the same direction. At about 20 minutes after 2 o'clock a white man and defendant went to the toll-house, situated near the west end of the bridge, when the white man presented the muzzle of a pistol toward Spencer, the toll-keeper, and compelled him to give him the money. Defendant was standing by, but said nothing, nor did he make any demonstration of any kind. After the robbery had been completed, the money all having been placed in the white man's pocket, he ordered defendant to go home, and compelled Spencer to go down a flight of steps to the railroad track below. They went down the steps, defendant in front, Spencer following, and the white man in the rear with his drawn pistol. When they arrived at the foot of the stairway, Spencer was ordered to go south along the tracks. He started to walk, but was ordered to run, which he did for some distance. He looked back and saw both men running toward the north, when they soon disappeared in or around a lumber yard. The evidence is clear enough as to the presence of defendant in the car coming from the Council Bluffs side of the river, and as to his presence with the other man at the scene of the robbery. The contention is that, as he took no active part in the robbing of Spencer, he should not be held guilty of the crime. It is true that mere presence is not always conclusive of participation in the acts of others. And if it be shown that such presence was by compulsion, or merely incidental, the presumption of participation, should such presumption arise, would be rebutted. But no explanation of the kind was offered. Moreover, the fact that defendant led the way down the steps and ran away with the principal actor in the despoiling of Spencer would seem to strongly indicate that there was more than an incidental meeting of the two. Defendant had come from across the river, and left the car some distance west of the bridge. The return of that car was the last

one to leave Omaha for Council Bluffs that night. There is no suggestion that the toll-house was in the line of travel to his lodging place. He did not cross the bridge to the east. He made no move to protect Spencer, nor to dissuade his associate from the commission of the crime. He was passive during the time of the robbery, possibly because his services were not needed, no resistance being made. These facts, unexplained as they were, would be sufficient to convince any reasonable mind that there was a common design between the two, and each carried out his part. The verdict cannot be molested as not sustained by the evidence. It is not essential that defendant should have taken any active part in the robbery. If he were personally present under such circumstances as to show that he was a participant in the offense, that would be sufficient to constitute him a principal. *Hill v. State,* 42 Neb. 503; *Dixon v. State,* 46 Neb. 298.

It was upon this theory that the instructions of the court were given, and it is not deemed necessary to extend this opinion by copying them here. We have examined them, and are unable to detect any prejudicial error in that regard.

The question of the constitutionality of the indeterminate sentence law was fully passed upon in *Wallace v. State, ante,* p. 158; the opinion having been filed since the preparation of defendant's brief. We have re-examined that opinion, and are satisfied with it. We have no doubt of the constitutionality of the law. The question was before the supreme court of the United States in *Ughbanks v. Armstrong,* 208 U. S. 481, and the decisions of the state courts in the cases cited in *Wallace v. State, supra,* were approved. The only difference between the holdings of those decisions and the views of the writer hereof would be as to the construction to be given to the language of the act. It is provided: "The court imposing such sentence shall not fix the limit or duration of the sentence, but the term of imprisonment of any person so convicted shall not exceed the maximum nor be less

than the minimum term provided by law," etc. Criminal code, sec. 502a. Had it not been for the holdings on practically similar statutes, that they deprived the trial courts of all discretion, we would not hesitate to hold that, while the court may not fix the limit or duration of the sentence, as under the prior law, yet this language does not prevent the fixing of an indeterminate sentence within the statutory limits. A sufficient illustration of this may be found in two cases of *Lukehart v. State, ante,* p. 219, and *Lambert v. State, ante,* p. 520, recently decided by this court. Those men were accused of receiving stolen property. The value of the property was found in one case to be $35.50, and in the other $36. The statute provides imprisonment of from one to seven years as the penalty for receiving stolen goods of the value of $35 or upwards. In each case the sentence is for that indeterminate term. Were the parties strangers and without friends who would become interested in their behalf, they might remain in prison for the full seven years. A cruel and unjust punishment, and yet beyond the power of the court to afford them justice, while no greater punishment would be imposed upon one who had received stolen property of the value of thousands of dollars. If permitted, the court might have imposed an indeterminate sentence commensurate with the offense, and yet, I believe, have been strictly within the letter and spirit of the law. We are, probably, bound by the many decisions of the high courts of the country, and the only power which can correct the evil is the legislature. We can see no objection to the constitutionality of the law, but cannot give our unqualified approval to the construction placed upon it.

It follows that the judgment of the district court must be affirmed, which is done.

**AFFIRMED.**

LETTON, J., concurring in part.

I cannot agree with the criticism made of the decisions of other courts. Under the statutory provisions, in my

42

judgment the holdings cannot logically be otherwise. I trust, however, that the legislature will remedy the obvious defect in the statute which permits the possibility of an unlearned or penniless convict remaining confined for the maximum term for the sole reason that he is unable to prepare and present for himself an application for release at an earlier time or to employ counsel for that purpose.