STATE BANK OF WILLIAMS, Appellee, v. JACOB H. GISH and B. H. GISH, Guardian, Appellants.

**Original notice:** SERVICE UPON INSANE PERSON: ACCEPTANCE OF SERVICE BY ACTING SUPERINTENDENT. The acceptance of service of notice of a suit for a patient confined in the hospital for the insane by one purporting to be the acting superintendent is not void, in the absence of any evidence as to how long he had been acting, whether he was a deputy or otherwise explaining his authority; as the court will assume that an acting superintendent was in charge of the hospital and acted with authority in accepting service of the notice.

**Same:** WAIVER OF IRREGULARITY. An irregularity in the service of notice upon an insane person is waived by the voluntary appearance to the action of the regular guardian, the filing of answer and making defense for the incompetent.

**Insanity:** PRESUMPTION: INSTRUCTIONS. When a patient has been discharged from a hospital for the insane as cured, it will be presumed that his sanity exists until the contrary is made to appear. Thus where there was evidence both for and against the sanity of a patient at a time subsequent to his discharge, an instruction that where a condition has been established a presumption obtains that it has existed and will continue to exist for some time, in the absence of evidence to the contrary, when followed by an application of the principle to the facts, was correct and sufficiently favorable to the defendants, who were alleging the insanity of the maker of the note in suit.

**Non-expert evidence.** A non-expert witness cannot give his opinion as to the sanity of a person without first detailing the facts upon which his opinion is based.

Evidence of value: COMPETENCY OF WITNESS. A farmer who owned horses and raised the one in question was competent to testify as to its value.

Taxation of attorney's fees. Attorney's fees are not taxable in a suit upon a note unless the statutory attorney's affidavit is filed with and at the time of filing the petition.

*Appeal from Hamilton District Court.*—HON. R. M. WRIGHT, Judge.

SATURDAY, NOVEMBER 28, 1914.

ACTION on a promissory note. Trial to a jury. Verdict and judgment against defendants, and they appeal.—*Modified* and *Affirmed.*

*D. C. Chase,* for appellants.

*A. N. Boeye* and *O. J. Henderson,* for appellee.

PRESTON, J.—I. Fourteen errors are assigned, but they are not all argued. The maker of the note, Jacob H. Gish, was adjudged insane and committed to the hospital at Cherokee January 7, 1909. He was paroled to the custody of his brother September 13, 1909, and discharged January 20, 1910. The abstract recites that he was discharged under section 2288 of the Code. The certificate of discharge is not in the record. But, being discharged under this section of the statute, we take it that he was discharged as cured on that date. About a month after that, or on February 22, 1910, he attended a sale and purchased some live stock, for which he gave his note, and this note is the one sued upon. He was sent back to the asylum in April, 1911, and again paroled, but on April 8, 1912, at the time the notice of this suit was served, he was confined in the hospital.

The service of notice was as follows:

State of Iowa, Cherokee County—ss.:

I, T. L. Long, acting superintendent of the Cherokee State Hospital, located at Cherokee, Iowa, do hereby accept

and acknowledge due and legal service of the annexed notice at the Cherokee State Hospital on this the 8th day of April, 1912, for and on behalf of Jacob H. Gish, who is a patient in said hospital on commitment by the commissioners of insanity of Hamilton county, Iowa, and this acceptance of service is now made by me for and on behalf of said patient, for the reason that personal service of said notice upon the said Jacob H. Gish would, in my opinion, injuriously affect such patient, and that personal service should not be made upon him.

T. L. Long,
Acting Superintendent Cherokee State Hospital.

B. H. Gish, who was the duly appointed and regular guardian of Jacob, appeared and filed an answer for his ward, alleging that, at the time of the execution of the note, Jacob was of unsound mind and incapable of doing business. Afterwards the guardian filed a motion to dismiss the action on the ground that no service of notice had been made on Jacob, or, if the court was of opinion that the case should not be dismissed, the guardian asked that the cause be continued until service could be had. The motion was overruled.

It is now insisted that the court had no jurisdiction to try the case because service of notice was had by the acting superintendent of the hospital. The statute (section 3525) provides that the superintendent may accept service.

1. ORIGINAL NOTICE: service upon insane person: acceptance of service by acting superintendent.

No complaint is made as to the form of the acceptance, and the only objection is that it is made by the acting superintendent. No cases are cited by counsel for either side, and there seems to be a dearth of authorities upon the question.

The phrase "acting officer" is used to designate, not an appointed incumbent, but merely a *locum tenens*, who is performing the duties of an office to which he himself does not claim title. 1 Am. & Eng. Enc. of Law, 577 (2d Ed.); 1 Cyc. 632. Both these authorities cite the same case (*Fraser v. U. S.*, 16 Ct. Cl. 514).

There is no evidence in the record as to how long this

acting superintendent has been so acting, whether he was a deputy acting in the place of the superintendent; whether the superintendent had resigned, or whether he was dead or away on a vacation.   All we have is the bare return.

Section 4902 of the statutes makes it a criminal offense for any person to take upon himself to exercise or officiate in any office or place of authority in this state without being legally authorized.   Section 4648 of the Code provides that the proceedings of all officers and courts of limited and inferior jurisdiction within the state shall be presumed regular, except in regard to matters required to be entered of record, and except where otherwise expressly declared.   We ought not to presume that Mr. Long would commit a crime by assuming to act as superintendent.   He appears to have been in charge of the institution.   In the absence of evidence, we think we ought to assume that he was so in charge and acting with authority; that he was in fact, for the time being, the superintendent.

However this may be, the service would not be void, but at most only irregular.   And we think the defect in the service, if any, was cured by the appearance of the regular guardian of the insane person, who employed attorneys, filed an answer, and litigated the questions at issue.   It is true that it has been held by this court that there is no authority or jurisdiction to appoint a guardian *ad litem* until a proper notice has been served, and there is some conflict in the authorities as to whether the appearance by a duly appointed guardian does waive a notice or defective notice, but we think the weight of authority is that where there is such appearance by the regular guardian, and a defense is made, the defect in the service of notice is waived. 22 Cyc. 1235, 1236, and cases; *Kromer v. Friday,* 10 Wash. 621 (39 Pac. 229, 32 L. R. A. 671, and note) ; 9 Enc. of Pleading & Practice, 938.

2. SAME: waiver of irregularity.

Section 3200 of the statute provides that guardians of the property of minors must prosecute and defend for their

wards and manage their affairs under proper orders of the court or judge; and section 3223 makes that section applicable to lunatics and others provided for in section 3219. This is the only debatable question in the case and is the one most argued. Under the circumstances, we are of opinion that the court had jurisdiction.

II. Complaint is made of some of the instructions, and it is said they are erroneous and conflicting. We think there is no merit in the contention. The court instructed, in substance, that sanity is the rule, insanity the exception, and placed the burden upon defendant to show that, at the time of the execution of the note, he was incapable of making a valid contract, and in other instructions defined what is necessary to constitute capacity. In another instruction the court stated, in substance, that, when a given state or condition is established by proof, the presumption, in the absence of evidence to the contrary, ordinarily is that such state or condition has existed for some time, and that it will for some time continue to exist, then applied this principle to the evidence in this case. There is no conflict in these instructions as applied to the evidence.

3. INSANITY: presumption: instructions.

As stated before, the note was given February 22, 1910. On January 20, 1910, about one month prior to the execution of the note, defendant had been discharged, under Code, section 2288. This section provides substantially that, when a patient is discharged as cured, the superintendent shall furnish him with a certificate to that effect, and forward a copy to the clerk, who shall record the same in the insane record, and that such record shall be *prima facie* evidence of the recovery of such person. The record here does not show that such certificate was issued or such a record was made, but we assume that the officers did their duty and complied with the law.

The last instruction above referred to is as favorable as defendant could ask. Of course the real question is: What

was the mental condition of Jacob on February 22, 1910, at the time he executed the note? His mental condition before and after, if not too remote, was proper to be considered as bearing on his condition at that date. No instructions were asked by defendants on this subject. Witnesses for plaintiff described the appearance and conduct of Jacob, his manner of conducting business, and the extent of it. They gave their opinions that he was sane. There was evidence on behalf of defendants to the contrary. There was such a conflict in the evidence at this point that it was for the determination of the jury.

III. The following question was asked B. H. Gish, a non-expert:

Q. From what you know personally, what would you say as to whether your brother was capable of transacting business or not on the 22d day of February, 1910, the date of this note?

Proper objection was made to this and sustained. No citation of authority is necessary to show that the question

4. NON-EXPERT EVIDENCE. does not require the witness to base his opinion upon facts stated by him, and which the jury were entitled to know.

IV. It is said that the court erred in allowing the witness Holderman to state the value of the horse, in part represented by the note in suit, without first showing that he had knowl-

5. EVIDENCE OF VALUE: competency of witness. edge of the market value. This horse is one of the animals purchased by defendant at the sale, and for which the note was given. Appellants' contention was that defendant paid too much for the horse, and that this was evidence of insanity. But Holderman testified that he was a farmer, and that he had raised this horse from its birth, and that he was the owner of fifteen horses at the time of the sale. A sufficient foundation was laid, and the evidence was competent; the weight of the testimony being for the jury.

From the record, the appellants' exception to the allow-ance of attorney's fees must be sustained. The verdict of the jury was for $615.28, and an attorney's fee of $40.70 was

6. TAXATION OF ATTORNEY'S FEES.

allowed and taxed. No complaint is made as to the amount, but the contention is that the affidavit for attorney's fee was not filed with and at the time the petition was filed, as required by section 3870 of the Code. *Wilkins v. Troutner*, 66 Iowa, 557.

It is said by appellee that the affidavit was filed with the petition, but such is not the record. The abstract recites that the petition was filed on the 9th day of February, but the year is not given. We assume it was 1912, because an amend-ment to the petition was filed November 22, 1912. The amend-ment simply recites that Jacob H. Gish was then insane, and that B. H. Gish was his guardian, and asking that, in addi-tion to having a judgment against Jacob, plaintiff have an order upon the guardian to pay the judgment from the prop-erty, etc. The abstract shows that the affidavit for attorney's fee was filed February 9, 1913, or one year after the filing of the petition, and some three months after the filing of the amendment to the petition. This was not in compliance with the statute and the holdings of the court. The original notice was served upon defendant April 8, 1912. The notice itself is not set out, and it is not shown what term the notice stated that the defendant was required to appear. It may be that the date given in the abstract, stating that the affidavit was filed February 9, 1913, is a misprint or a mistake, but we must go by the record. An additional abstract was filed by appel-lee, but no correction was made as to this.

Other matters are referred to, but they are of minor im-portance. All such have been considered, but we do not deem them of sufficient importance to warrant discussion.

The judgment will be modified by striking out the attor-ney's fee allowed, and in all other respects the judgment is affirmed.—*Modified* and *Affirmed*.

LADD, C. J., and EVANS and WEAVER, JJ., concur.