Guignon v. State.

CHARLES GUIGNON v. STATE OF NEBRASKA.

FILED JULY 14, 1917.   No. 20006.

1. **Information: CONVICTION: EVIDENCE.** Under our statute (Rev. St. 1913, sec. 8579) the procuring, aiding, and abetting the commission of a felony is a distinct offense, and, upon an information charging that offense, a conviction of the principal offense cannot be sustained; but there may be a conviction of the crime charged, if sufficiently proved, although the evidence may also prove the defendant guilty of the principal offense.

2. ————: **VENUE: OBJECTION.** If the information alleges facts showing that the crime charged was committed in the county of the trial, it will not, after conviction, be held insufficient for not formally stating the venue, when no objection and no protest was made before the trial.

ERROR to the district court for Hall county: JAMES N. PAUL, JUDGE. *Affirmed.*

*C. J. Southard* and *J. L. Cleary,* for plaintiff in error.

*Willis E. Reed, Attorney General,* and *Charles S. Roe,* contra.

HAMER, J.

This is a proceeding in error by Charles Guignon from the judgment of the district court for Hall county, by which judgment he, the said Guignon, was on the 7th day of December, 1916, sentenced to imprisonment for an indeterminate period of not less than 3 years nor more than 15, and to pay the cost of prosecution. There was a charge against him and John Reed in said court, made by the county attorney of Hall county, Benjamin J. Cunningham, and under which he, said Guignon, was adjudged to be guilty and to suffer said imprisonment. The charge was: "That John Doe, whose real name is unknown, late of the county aforesaid (Hall) on the 16th day of October, A. D. 1916, in the county of Hall and the state of Nebraska aforesaid, in and upon one John Hicks, then and there being unlawfully, feloniously, and forcibly and by violence, did make an assault, and him, the said John Hicks, did put in bodily fear, and from the person and against the will of him, the said John Hicks then and there, forcibly and by violence, and feloniously did steal, take, and carry away one pocketbook of the value of one dollar ($1.00), one United States five-dollar bill ($5.00), and silver coins to the amount of three dollars ($3.00), all of the value of eight dollars and fifty cents ($8.50) of the property, goods, and chattels of the said John Hicks; and before said robbery and felony were committed by the said John Doe, whose real name is unknown, to wit, on the 16th day of October, 1916, Charles Guignon and John Reed unlawfully, purposely, and feloniously did procure, incite, abet, and aid the said John Doe, whose real name is unknown, in the perpetrating of said robbery in the aforesaid manner and form."

The record shows that the county attorney of Hall county, Benjamin J. Cunningham, and William Suhr appeared in court on behalf of the state, and that the defendant, Charles Guignon, appeared in person, accompanied by his counsel, J. L. Cleary and C. J. Southard, and making no objection to the charge, "thereupon the

said defendant waived arraignment and the reading of the information filed therein, and to the charges of said information entered a plea of 'not guilty,' and states that he is ready for trial."

The evidence taken at the trial shows, as stated in the brief of plaintiff in error, that John Hicks, the witness who complains of being robbed, came to Grand Island Saturday night with the defendant, Jack Reed; that on the day following (Sunday evening), October 16, 1916, he went out in a taxi with Jack Reed and three other fellows, in the car of plaintiff in error, and which was driven by him; that, coming back to town, the witness rode in the back seat with Jack Reed and one other fellow, and Guignon was driving, and the same party rode with him in the front seat; that Guignon drove south off the main road, and then claimed he had a flat tire and stopped, and then all got out, and the fellow that was riding in the front seat with Guignon told witness to pull out his money, the fellow that had the gun, the fellow in the front seat with Guignon, said: "Pull out your money." Witness gave him 'his billbook and $2 and Jack Reed said: "Where is your pouch?" Witness stated that he was sure Guignon was standing there out of the car. John Reed, a witness for the state, testified that he and Hicks went to Harmony Hall in Guignon's car the night of the robbery; coming back, the witness, Hicks, and Smith were in the back seat, and Guignon and the short fellow in the front seat, Guignon driving; the car turned off the road about a half mile, and the short fellow "stuck us up;" that Guignon got out of the car and stayed right beside witness and Hicks.

The evidence which we have quoted is conclusive to the effect that plaintiff in error was driving the car and turned off of the road to town; that he stopped the car, claiming he had a flat tire, and got out with the others; that the robbery immediately took place in the actual presence of the plaintiff in error. None of this testimony is disputed. John Reed testified that he was one of the

parties that was held up, and that he lost "80 cents, somewhere about 80 cents." Reed asked Guignon what the fare was to Harmony Hall, and Guignon said it was paid. The witness did not know whether they split the money or not. He was asked: "Q. Doe is the fellow that sat in the back seat with you that night? A. Yes, sir." The county attorney, Benjamin J. Cunningham, testified that he talked with Guignon, who denied that there had been any shooting about the car that night. The county attorney testified that he asked Guignon why the shooting took place, and Guignon said: "Just to see him run." The county attorney testified that the affair happened in Hall county, Nebraska; that it was about a quarter of a mile west and a quarter of a mile south of Harmony Hall. William Pierce testified that Guignon had told him that he had a couple of "chumps," and he wanted Pierce to go with him; that he had told Guignon he did not want to go; Guignon said he was going to Harmony Hall. He also testified that Guignon had a gun in his coat pocket, and that he was going to get "these fellows out there." The witness testified that he had been asked by Guignon to go and see Jack Smith, and see if there was any way out of it. He wanted to know if the witness could get Jack Smith out of the road. No testimony was offered for the defense.

The verdict rendered, omitting the title and the term of the court, is as follows: "We the jury in this case, being duly impaneled and sworn, do find and say that the defendant, Charles Guignon, is guilty of the crime as charged in the information, and do find the value of the property taken to be $8.50. (Signed) L. P. Mullen, Foreman."

Guignon, by his counsel, C. J. Southard and J. L. Cleary, filed a motion for a new trial, which was overruled.

The defendant was tried and convicted on the statutory charge of procuring, aiding, and abetting another in the commission of a felony. Because, under the evi-

dence, he was present at the time of the commission of the crime, which would render him guilty as principal, it is argued that he was illegally convicted. While it is true that this court has held that procuring, aiding, and abetting a crime and the commission of it are distinct offenses, instead of being different degrees of the same offense, and that one cannot be charged with one offense and convicted of the other, it has never held that where one is charged with aiding and abetting a felony, or, as at common law, with being an accessory before the fact, and from the evidence he is found guilty as charged, the mere fact that the evidence not only shows him an aider and abettor, but goes further and shows him present when the offense was committed, and therefore guilty as principal, would operate to make the charge bad or the conviction void. In other words, the fact that a defend-ant is guilty of two offenses ought not to release him from the charge of being guilty of either. In *Casey v. State,* 49 Neb. 403, the defendant was charged as acces-sory before the fact and convicted. The case was re-versed, not because the defendant was present and may have been guilty as principal, but because, as stated by Judge Post in his opinion, there was no evidence what-ever of any act on the part of the defendant as aider or abettor of the crime charged. In other words, it was held that defendant could not be charged as accessory and convicted as principal. James Casey was charged with inciting, procuring, aiding, and abetting John Casey to commit the robbery charged. The only evidence against James Casey tended to show him guilty as a principal. There was therefore no evidence to sustain his conviction. The case consequently is not in point.

Section 8579, Rev. St. 1913, provides: "Whoever shall aid, abet, or procure any other person to commit any felony, shall, upon conviction thereof, be imprisoned in the penitentiary for any time between the respective pe-riods for which the principal offenders could be impris-oned for the principal offense; or, if such principal of-fender would, on conviction, be punishable with death,

or be imprisoned for life, then such aider, abettor, or pro-
curer shall be punished with death or be imprisoned for
life, the same as the principal offender would be."

In *Brinegar v. State,* 82 Neb. 558, it is said: "An aid-
er or abettor may be one who so far participates in the
commission of a crime as to be present for the purpose of
assisting therein, if necessary. In such a case he will
also be liable as principal." Guignon was liable as an
aider and an abettor, and also as a principal. He is
shown by the evidence to have been the originator of the
plan of the robbery, and he was an active participant in
its execution. He appears to have been guilty as an aider
and abettor, and also as a principal.

In *Lamb v. State,* 69 Neb. 212, 218, Lamb was charged
with aiding, abetting, and procuring one Harry Hill and
Verne Stewart to steal 10 head of steers belonging to
Rooney & Company. The evidence showed that Lamb
procured Hill and Stewart to take the steers. Hill and
Stewart put the stolen steers in the shipping yard. Lamb
took these steers along with his own cattle and shipped
them to Omaha. He was held guilty of feloniously and
purposely aiding and abetting and procuring the thieves
to commit the crime. At the same time he is shown by
the evidence to have participated in the theft by remov-
ing the cattle to Omaha. Judge Sullivan, in delivering
the opinion of this court in *Lamb v. State,* said: "Be-
sides the evidence was quite sufficient to establish *prima
facie* the existence of a common purpose and design to
steal and sell the Rooney cattle. The sale had not yet
been made. The conspiracy was still pending, and con-
sequently the acts and declarations of each of the con-
spirators in the prosecution of the unlawful enterprise,
or with reference to it, were the acts and declarations
of all."

*Dixon v. State,* 46 Neb. 298, is not in point. In that
case an abortion was committed. It was claimed that
the defendant was present and participated in the com-
mission of the criminal act. He was therefore liable as
a principal, and section 1 of the Criminal Code relating

Guignon v. State.

to aiding, abetting, and procuring another to commit a felony did not apply because the defendant was himself a principal, and was not alleged to be an aider and abettor.

In *Oerter v. State,* 57 Neb. 135, the court, by Ragan, Commissioner, said: "The prisoner was indicted for one crime. He could not be lawfully convicted of another and different crime for which he was not indicted." In that case there was no charge of aiding and abetting or procuring, and therefore it was improper to instruct the jury that they could find the defendant guilty of aiding, abetting, or procuring.

In *Noland v. State,* 19 Ohio St. 131, it was held: "By the thirty-sixth section of the act providing for the punishment of crimes, aiding, abetting, or procuring a crime to be committed is made a substantive independent offense, and it is not necessary the principal should be convicted before the accessory is tried." The question here presented, as to whether the defendant might be found guilty of either offense, was not considered in the Ohio case. Alleged violators of the law in this state are to be tried under the statutes defining the offenses charged against them. Section 8579 should be given an interpretation consistent with the position of our state in regard to the conditions of the common law. We should not seek to extend the common law where our statutes and our Constitution never intended it should go. Section 3697, Rev. St. 1913, provides: "So much of the common law of England as is applicable and not inconsistent with the Constitution of the United States, with the organic law of this state, or with any law passed or to be passed by the legislature of this state, is adopted and declared to be the law within the state of Nebraska." The law of the state always should control. It is so provided in this section. Section 8567, Rev. St. 1913, provides: "The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this Code. Its provisions and all proceedings under it shall be liberally construed, with a view to promote its

101 Neb.—38

object and assist the parties in obtaining justice." Just as plainly as the legislature could say it, it is said that the will of the people, as expressed by their representatives in the legislature, shall be the law of the state, and that the common law shall not be allowed to encroach upon it.

Objection is made by the defendant Guignon that the information fails to state the venue. It alleges that an assault was made in Hall county by John Doe upon John Hicks, and the taking from Hicks of his pocketbook and money by the said John Doe in Hall county. The assault and the taking of the pocketbook and the money are all alleged to have been on the 16th day of October, 1916. It is also alleged that "Charles Guignon and John Reed unlawfully, purposely, and feloniously did procure, incite, abet, and aid the said John Doe, whose real name is unknown, in the perpetration of said robbery in the aforesaid manner and form." What Guignon and Reed did was, in the absence of any statement to the contrary, presumably done in Hall county. In any event, if the defendant made no objection to the form of the information and pleaded not guilty, he cannot wait until he sees whether he is acquitted before he makes the objection which he here seeks to make. Because he failed to object he waived the objection which he might perhaps have made at the proper time. While the information does not affirmatively show that the robbery was committed in Hall county, no objection was made until after the trial. It comes too late at this time. *Emery v. State,* 78 Neb. 547; *Johnson v. State,* 53 Neb. 103; *Korth v. State,* 46 Neb. 631; *Bailen v. Badger Import Co.,* 99 Neb. 24; *Davis v. State,* 31 Neb. 247.

The judgment of the district court is right, and it is

AFFIRMED.

ROSE, J., not sitting.

SEDGWICK, J., concurring.

The defendant was tried and convicted on the statutory charge of procuring, aiding, and abetting another in

the commission of a felony. Because, under the evidence, he was present at the time of the commission of the crime, which would render him guilty as principal, it is argued that he was illegally convicted. This court has held that procuring, aiding, and abetting a felony and the commission of it are distinct offenses, instead of being different degrees of the same offense, and that one cannot be charged with one offense and convicted of the other; but it has never held that where one is charged with aiding and abetting a felony, or, as at common law, with being an accessory before the fact, and from the evidence he is found guilty as charged, the mere fact that the evidence not only shows him an aider and abettor, but goes farther and shows him guilty as principal also, would operate to make the charge bad or the conviction void. In other words, the fact that a defendant is guilty of two offenses ought not to release him from the charge of being guilty of either. Common-law precedents have sometimes gone to extremes to protect the rights of persons charged with crime. In *Casey v. State*, 49 Neb. 403, the case cited, the defendant was charged as accessory before the fact and convicted. The case was reversed, not because the defendant was guilty as principal, but because, as stated by Judge Post in his opinion, there was no evidence whatever of any act on the part of the defendant as aider or abettor of the crime charged. In other words, it was held that defendant could not be charged as accessory and convicted as principal. It is also claimed that' the information failed to show venue. The information does show that the robbery was committed in Hall county. No complaint of the information was made until after trial. It comes too late at this time.

The propositions of the law which have been adopted by the court in the syllabus are all that is involved in the case.

For the reasons stated above, I concur in the conclusion.

LETTON, J., concurs in separate opinion of SEDGWICK, J.