STATE, EX REL. GLENN GOSSETT, APPELLANT, V. JOSEPH O'GRADY, APPELLEE.

291 N. W. 497

FILED APRIL 5, 1940. No. 30819.

*Olaf W. Osnes,* for appellant.

*Walter R. Johnson, Attorney General,* and *George W. Ayres, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

EBERLY, J.

Glenn Gossett appeals from a final order entered in the

district court for Lancaster county, in a habeas corpus proceeding instituted by him therein, which order determined that he was "not unlawfully imprisoned or deprived of his liberty by respondent," Joseph O'Grady; denied his application for release; dismissed his petition; and discharged the writ of habeas corpus theretofore issued on his application therefor.

The record discloses that William P. Mullen was a practicing attorney at law in Hall county, Nebraska, in June and July, 1936. Lloyd Kelly was at that time the county attorney of Hall county, and, being about to be absent from the state, he asked William P. Mullen to take care of the duties of the county attorney's office. Mr. Mullen agreed to do so. On June 27, 1936, and while Mr. Kelly was absent from the state, occasion arose to file an information against Glenn Gossett, who is now the relator and appellant in this action, charging him with grand larceny, alleged to have been committed in Hall county. Mr. Mullen prepared, verified and filed such an information, and signed his own name to it as acting county attorney. On June 27, 1936, Glenn Gossett pleaded guilty to the charges contained in the information before Honorable E. G. Kroger, a judge of the district court for Hall county, Nebraska, and was sentenced to serve a term of five years in the Nebraska state penitentiary. He was thereupon conveyed to the place of confinement pursuant to such sentence, and was thereafter imprisoned therein pursuant thereto. On August 1, 1939, he instituted the proceeding herein, and the final order thereafter entered denying relief, he now challenges by this appeal. His claim for relief is based upon the proposition that William P. Mullen had no legal right to sign, make, verify and file the information against him, and the information thus signed and filed by William P. Mullen was void, and the action of the trial court thereon was also void as being without jurisdiction.

The information, omitting the caption, is as follows: "Be It Remembered, That Wm. P. Mullen, Acting County Attorney in and for Hall County, and in the Eleventh Ju-

dicial District of the State of Nebraska, who prosecutes in the name and by the authority of the State of Nebraska, comes here in person into Court at this the April Term, A. D. 1936, thereof, and for the State of Nebraska gives the Court to understand and be informed that Glenn Gossett, late of the County aforesaid, did, on or about the 23rd day of June, A. D. 1936, in the County of Hall and the State of Nebraska aforesaid, then and there being, then and there unlawfully and feloniously did steal, take and carry away Fifty Dollars ($50.00)," etc.

This information is sworn to and verified by Wm. P. Mullen, as the acting county attorney.

The proceedings of the district court, and the sentence imposed upon this information, are, in substance, as follows: "Whereas; At a regular term of the District Court for said county, which term was begun and held at the court-house, in Grand Island, Nebraska, in said county, on the 13th day of April, 1936; Present, the Hon. E. G. Kroger, one of the judges of said court; And, Whereas, Wm. P. Mullen, Acting County Attorney in and for the County of Hall, State of Nebraska, on the 27th day of June, 1936, came into Court, and presented a certain information in due form of law, against Glenn Gossett for Grand Larceny, which information was by order of the Court filed and the cause docketed; and afterwards on the 27th day of June, 1936, further proceedings were had upon said information, to-wit: On Plea of Guilty, The said defendant Glenn Gossett was duly arraigned and entered his plea of guilty to the charge contained in the information. * * * And, Whereas, On the 3d day of July, 1936, the said Glenn Gossett was duly arraigned before the Court for sentence, and was then by the said Judge sentenced, in these words: 'It is the sentence of the Court that the defendant be confined in the State Penitentiary at Lancaster, in Lancaster County, Nebraska, at hard labor, Sundays and Holidays excepted, for a period of five years. Solitary confinement to be no part of this sentence."

Originally section 8 of article I of the Constitution of 1866

required prosecutions for felonies, with certain exceptions, to be "on the presentment or indictment of a grand jury." In our Constitution of 1875 this provision was modified in part by adding thereto a proviso in the following terms: "Provided, That the Legislature may by law, provide for holding persons to answer for criminal offenses on information of a public prosecutor; and may, by law, abolish, limit, change, amend or otherwise regulate the grand jury system." Neb. Const. 1875, art. I, sec. 10.

By chapter 108 of the session laws of 1885, approved March 9, 1885, there was duly enacted "An act to provide for prosecuting offenses on information and to dispense with the calling of grand juries except by order of the district judges."

The following constitutes excerpts of this legislation, as now carried in our Compiled Statutes of 1929, viz.:

Section 29-1601, Comp. St. 1929, provides: "The several courts of this state shall possess and may exercise the same power and jurisdiction to hear, try and determine prosecutions upon information, for crimes, misdemeanors, and offenses, to issue writs and process, and do all other acts therein, as they possess and may exercise in cases of the like prosecutions upon indictments."

By section 29-1602, it is provided, in part: "All informations shall be filed in the court having jurisdiction of the offense specified therein, by the prosecuting attorney of the proper county as informant; he shall subscribe his name thereto," etc.

Section 29-1603 provides in part: "All informations shall be verified by the oath of the county attorney, complainant, or some other person, and the offenses charged therein shall be stated with the same fullness and precision in matters of substance as is required in indictments in like cases."

In section 29-1604 we find the following: "The provisions of the criminal code in relation to indictments, and all other provisions of law, applying to prosecutions upon indictments to writs and process therein, and the issuing and service thereof, to motions, pleadings, trials and punish-

ments or the execution of any sentence, and to all other proceedings in cases of indictments, whether in the court of original or appellate jurisdiction, shall in the same manner and to the same extent, as near as may be, apply to informations, and all prosecutions and proceedings thereon."

Embraced within the provisions thus made applicable to prosecutions by informations by such section 29-1604 are the following:

Section 29-1806: "The accused may except to an indictment by: First. A motion to quash; Second. A plea in abatement; Third. A demurrer."

Section 29-1807: "A motion to quash may be made in all cases, when there is a defect apparent upon the face of the record, including defects in the form of the indictment or in the manner in which an offense is charged."

Section 29-1811: "The accused shall be taken to have waived all defects which may be excepted to by a motion to quash, or a plea in abatement, by demurring to an indictment or pleading in bar or the general issue."

As to the verification of the information now before us, it may be said that a similar statutory provision existed in Washington, which provided that such a verification may be made by the "prosecuting attorney, complainant, or some other person." It was held that in the verification of an information "all the words descriptive of the capacity or character of the affiant may be entirely disregarded, and the verification will still be sufficient." *Hammond v. State,* 3 Wash. 171, 28 Pac. 334.

Washington, Kansas and Missouri have statutory provisions relative to the verification of criminal informations similar to the provision here under consideration. The following cases hold that a verification by "some other person" is sufficient and renders additional verification by the prosecuting official unnecessary. *State v. Brooks,* 33 Kan. 708, 1 Pac. 591; *State v. Clark,* 158 Mo. App. 489, 138 S. W. 894; *State v. Davidson,* 44 Mo. App. 513. *Bailey v. State,* 36 Neb. 808, 55 N. W. 241, affords an instance where this court sustained an information so verified.

It is obvious, therefore, as disclosed by the record presented, that as to a proper statement of the offense charged and the verification thereof, the information attacked complies with the statutory requirements. The force and effect of the requirements that "all informations shall be filed * * * by the prosecuting attorney of the proper county as informant; he shall subscribe his name thereto," under the facts in this case, are all that still remain for our consideration.

It will be remembered that "Habeas corpus is a collateral, and not a direct, proceeding, when regarded as a means of attack upon a judgment sentencing a defendant." *Hulbert v. Fenton*, 115 Neb. 818, 215 N. W. 104. See, also, *Alexander v. O'Grady, ante*, p. 645, 290 N. W. 718.

A judgment or sentence of a court of record in a criminal case is thus supported by the usual presumptions of validity and regularity when thus attacked. To obtain release from a sentence of imprisonment by habeas corpus, such sentence must be absolutely void. *Hulbert v. Fenton, supra*; *Michaelson v. Beemer*, 72 Neb. 761, 101 N. W. 1007; *In re Carbino*, 117 Neb. 107, 219 N. W. 846.

The failure of the county attorney, in person, to present to and file the information in the proper court, and the failure of the county attorney, in person, to indorse or sign his name thereto were obviously known to the relator, and were at all times disclosed by the public records, of which he was bound to take notice. Under the statutes quoted, if these omissions complained of constituted errors, a definite time was provided for their correction by a motion to quash. A failure of the relator to avail himself of that remedy prior to his plea to the merits, by force of statute, constituted a waiver thereof.

The general rule is that, where an objection is not made at the time prescribed by law, the objection is waived. 12 Standard Ency. of Procedure, 665. This jurisdiction is fully committed to this rule. *Johnson v. State*, 53 Neb. 103, 73 N. W. 463; *Davis v. State*, 31 Neb. 247, 47 N. W. 854; *Richards v. State*, 22 Neb. 145, 34 N. W. 346;

*Emery v. State,* 78 Neb. 547, 111 N. W. 374; *Guignon v. State,* 101 Neb. 587, 163 N. W. 858; *Tasich v. State,* 111 Neb. 465, 196 N. W. 688.

It is also a well-established principle of criminal procedure that "A plea of guilty waives any defect not jurisdictional, and which may be taken advantage of by motion to quash or by plea in abatement." 16 C. J. 403.

Indeed, in *Trimble v. State,* 61 Neb. 604, 85 N. W. 844, this court expressly approved the principle which controls in the instant case. In that case defendants Trimble and Wilson were being tried on the charge of robbery from the person. They had been arraigned and a plea of not guilty entered in their behalf. On the day of trial, without withdrawal of their plea, defendants filed a motion to quash the information, based on the grounds, viz.: (1) That the information was not filed by, or verified by the oath of, the prosecuting attorney; (2) that the information was not sworn to before a magistrate or other judicial officer authorized by law to administer oaths. The trial court struck the motion from the files and refused to accord it any consideration whatever. This action of the district court this court sustained, for the reason that these objections, if ever existing, had been waived by the defendants under the statutes, now sections 29-1811 and 29-1604, Comp. St. 1929. It will be noted that the first clause of the motion to quash in the *Trimble* case sets forth a contention similar to that here presented, and which was held waived by failure to file a motion to quash within the time prescribed, which is the exact situation presented in the instant record.

But even if properly raised by timely objection, the validity of the information is by no means foreclosed. It is not questioned but that this information in terms properly charges the crime. It is properly sworn to.

The admitted facts include the following, viz.: Lloyd Kelly, the duly elected and qualified county attorney, was absent from the state of Nebraska from June 23 to July 4, 1936. Before leaving he requested William P. Mullen to take care of the duties of the county attorney's office, and

Mullen expressly assented to such request. Attorney Mullen thereupon, after this authorization, without taking an oath or giving bond, prepared, signed, swore to and filed this information as acting county attorney in the district court for Hall county on June 27, 1936. The district court thereupon caused the record to be made as hereinbefore set forth. The word "acting" in this connection has been employed to designate a *locum tenens* who is performing the duties of an office to which he does not himself claim title. .

The supreme court of Iowa in *State Bank of Williams v. Gish,* 167 Ia. 526, 149 N. W. 600, in discussing the term "acting officer," employed the following language:

"The phrase 'acting officer' is used to designate, not an appointed incumbent, but merely a *locum tenens,* who is performing the duties of an office to which he himself does not claim title. 1 Am. & Eng. Ency. of Law (2d ed.) 577; 1 Cyc. 632. Both these authorities cite the same case, *Fraser v. United States,* 16 Ct. Cl. 514.

"There is no evidence in the record as to how long this acting superintendent had been so acting, whether he was a deputy acting in the place of the superintendent, whether the superintendent had resigned, or whether he was dead or away on a vacation. All we have is the bare return."

In this *Gish* case, service of process upon an acting superintendent of an insane hospital was held good although no provision of statute authorized such designation.

Section 26-904, Comp. St. 1929, provides in part: "The county attorney may appoint one or more deputies who shall act without any compensation from the county, to assist him in the discharge of his duties." So far as advised, there is no requirement that such appointment be in writing. It is obvious, however, that the designation "acting county attorney" is not inconsistent with an appointment of one as the substitute of the county attorney and empowered to act for him in his name or in his behalf. The words employed must be taken in the light of the duties to be performed, and the acts required to make such performance legal and valid. This was certainly in the contempla-

tion of the parties to the transaction, and, under the facts involved, necessarily required the creation of a deputy county attorney. True, Mullen did not qualify by taking the oath and giving bond as such. But, would these omissions invalidate his official acts when collaterally attacked?

The relator relies upon *Langford v. State*, 114 Neb. 207, 206 N. W. 756, and *Lower v. State*, 106 Neb. 666, 184 N. W. 174, to sustain an affirmative answer to this question. Neither of these cases involved a collateral attack upon a judicial determination; both were direct attacks by appropriate proceedings in error. In the *Langford* case no information was filed by any one. In the *Lower* case the information was timely attacked by motion to quash, so that the doctrine of waiver here controlling was in no manner involved or determined in either of the decisions so relied upon by the relator.

In *Haskell v. Dutton*, 65 Neb. 274, 91 N. W. 395, this court sustained the validity of summons issued by J. E. Evans as deputy clerk of the district court, under the following facts: "When the present action was instituted, Evans was in the office of the clerk of the district court, claiming the right to act as deputy. He had acted in that capacity continuously for a year or more. He held an appointment from the duly constituted clerk and was discharging the duties of the office with his consent and under his direction. The appointment, however, was not in writing, and there had been, on Evans' part, a total failure to comply with the provisions of the statute (Compiled Statutes, 1901, ch. 10), relative to official bonds and oaths. Upon these facts, the district court rightly ruled that it had jurisdiction of the defendants and authority to pronounce judgment against them. Evans, according to the narrowest definition of the term, was a *de facto* officer, and his acts, so far as they affected the parties to the suit, were just as binding and efficacious as they would have been if all the conditions necessary to make him a *de jure* officer had been fulfilled. *Ex parte Johnson*, 15 Neb. 512; *Hamlin v. Kassafer*, 15 Or. 456; *Norton v. Shelby County*, 118 U. S. 425;

*Fulton v. Town of Andrea,* 73 N. W. Rep. (Minn.) 256; *Wheeler v. Sterrett,* 62 N. W. Rep. (Ia.) 675; *Carleton v. People,* 10 Mich. 249, 259."

We also take the following from the opinion in *Gragg v. State,* 112 Neb. 732, 201 N. W. 338, viz.: "Besides the foregoing averments, defendant charges that Mr. Gibbs, who verified and filed the information, was not the duly qualified, elected or appointed county attorney of McPherson county, and that 'his pretended acts as such assumed official were and are without authority of law and of no force or effect.' But the record shows that his appointment was regular. He did not, however, take the official oath nor file a bond. But he held himself out as county attorney and performed the duties pertaining to this office and was recognized by the public as county attorney, so that he was county attorney *de facto. Baker v. State, ante,* p. 654."

Now, the journal entry heretofore quoted discloses that Mr. Mullen held himself out as the duly authorized "acting county attorney" and was recognized as such by the district court for Hall county, and the information prepared, signed and filed by him was, by the order of that court, accepted and ordered entered of record as such. While he took no official oath and gave no official bond, these omissions, under the authority above cited, it would seem, could not be challenged collaterally, as is attempted in the instant case.

The following language of Morrissey, C. J., in *Holland v. State,* 100 Neb. 444, 160 N. W. 893 (an error proceeding to the district court for Furnas county), is applicable and controlling, it would seem, in the case here presented, viz.:

"It is urged that the information is absolutely void, because not signed by the county attorney in person, and we are cited to *Cubbison v. Beemer,* 81 Neb. 824, which follows an earlier case, holding that an information filed out of the term time is void. Section 5599, Rev. St. 1913 (Comp. St. 1929, sec. 26-904) authorizes the county attorney to appoint deputies who may assist him in the discharge of his duties. There is nothing in this record to show that Lambe was appointed such deputy, but when his right to sign the

information is questioned for the first time after arraignment and plea, and while a plea of not guilty is still pending, his appointment, qualification and right to act in the absence of a showing to the contrary, will be presumed."

It must also be admitted that a plea of guilty as charged is equally as effective as a waiver as is a plea of not guilty.

The conclusion of the entire matter in the instant case is: That the regularity of the proceedings leading up to a sentence in a criminal case cannot be inquired into in a proceeding for a writ of habeas corpus; that, if the court had jurisdiction of the defendant and authority to try the charge against him, its action can be assailed only in a direct proceeding; that none of the errors upon which the relator relies in this proceeding affect the jurisdiction of the trial court (when collaterally considered) and they have been effectually waived by the petitioner.

It follows, therefore, that the action of the district court in its denial of relief to petitioner is correct, and is

AFFIRMED.