STATE OF NEBRASKA, EX REL. EDWARD PETRY, V.
GEORGE W. LEIDIGH.

FILED FEBRUARY 18, 1896.    No. 8242.

1. **Habeas Corpus:** REVIEW. Errors and irregularities of the
   trial court in a criminal prosecution must be corrected
   by direct proceeding for a review of the final judgment
   or order complained of. The writ of *habeas corpus* is
   never allowed as a substitute for an appeal or writ of
   error.

2. **Extradition:** RIGHT TO TRY FUGITIVE FOR EXTRADITABLE
   OFFENSES. A fugitive from justice surrendered by one
   state upon the demand of another may, notwithstanding
   his objection, be prosecuted by the latter for any extra-
   ditable offense committed within its borders without first
   having had an opportunity to return to the state by which
   he was surrendered. (*Lascelles v. Georgia,* 148 U. S., 537.)

3. ———: CONSTITUTIONAL LAW. A fugitive is not in such case
   denied any rights, privileges, or immunities secured to
   him by the constitution or the laws of the United States.

4. **Imprisonment Without Extradition.**    *In re Robinson,* 29
   Neb., 135, distinguished.

ORIGINAL application for writ of *habeas corpus.*

The opinion contains a statement of the case.

*J. O. Detweiler,* for petitioner:

The petitioner not having had an opportunity
to return to the state from which he was taken,
should only have been tried for the offense for
which he was extradited. (9 Am. & Eng. Ency.
Law, 252; *State v. Hill,* 40 Kan., 338; *In re Robin-
son,* 29 Neb., 135; *In re Cannon,* 47 Mich., 481; *Ex
parte McKnight,* 28 N. E. Rep. [O.], 1034; *Compton
v. Wilder,* 40 O. St., 130; *Van Horn v. Great Western
Mfg. Co.,* 37 Kan., 523; *United States v. Watts,* 14

Fed. Rep., 130; *Ex parte Hibbs*, 26 Fed. Rep., 421; *Ex parte Coy*, 32 Fed. Rep., 911; *United States v. Rauscher*, 119 U. S., 407; *State v. Vanderpool*, 39 O. St., 278; *Commonwealth v. Hawes*, 13 Bush [Ky.], 700; *State v. Simmons*, 39 Kan., 262; *State v. Ross*, 21 Ia., 467; *State v. Brewster*, 7 Vt., 118; *Dows' Case*, 18 Pa. St., 37; *Ker v. People*, 110 Ill., 627.)

*Habeas corpus* is the proper writ upon which to procure the prisoner's discharge. (*Ex parte Mc-Knight*, 28 N. E. Rep. [O.], 1034; *In re Robinson*, 29 Neb.; 135.)

*A. S. Churchill, Attorney General*, and *George A. Day, Deputy Attorney General*, for the state:

The court has jurisdiction over the person of one who has been extradited from a sister state to place him on trial for an offense other than that for which he was extradited, without his first having had an opportunity to return to the state of his asylum. (*State v. Brewster*, 7 Vt., 118; *In re Noyes*, 17 Albany L. J., 407; *Kingen v. Kelley*, 28 Pac. Rep. [Wyo.], 36; *State v. Glover*, 17 S. E. Rep. [N. Car.], 525; *In re Keller*, 36 Fed. Rep., 682; *Mahon v. Justice*, 127 U. S., 700; *State v. Ross*, 21 Ia., 467; *State v. Stewart*, 19 N. W. Rep. [Wis.], 429; *Ham v. State*, 4 Tex. App., 645; *Williams v. Weber*, 28 Pac. Rep. [Colo.], 21; *People v. Cross*, 32 N. E. Rep. [N. Y.], 246; *Commonwealth v. Wright*, 33 N. E. Rep. [Mass.], 82; *Lascelles v. State*, 16 S. E. Rep. [Ga.], 945; *State v. Kealy*, 56 N. W. Rep. [Ia.], 283; *State v. Wenzel*, 77 Ind., 428; *Cook v. Hart*, 146 U. S., 183; *In re Miles*, 52 Vt., 609.)

Upon the facts presented by the record *habeas corpus* is not petitioner's proper remedy. (*Ex parte Fisher*, 6 Neb., 309; *Williamson's Case*, 26 Pa. St., 17; *Commonwealth v. Deacon*, 8 S. & R. [Pa.], 72;

*Ex parte Toney*, 11 Mo., 661; *In re Betts*, 36 Neb., 282; *State v. Crinklaw*, 40 Neb., 759; *In re Havlik*, 45 Neb., 747.)

POST, C. J.

This is an application addressed to this court, in the exercise of its original jurisdiction, for a writ of *habeas corpus* in behalf of Edward Petry, who is, according to the complaint which is the basis of the proceeding, unlawfully imprisoned by the respondent, George W. Leidigh, as warden of the penitentiary. It is unnecessary to copy at length from the record, as the material facts may be briefly stated, viz.: On the 4th day of April, 1895, application was made to the governor of this state for a requisition upon the governor of Illinois for the surrender of the relator, an alleged fugitive from justice, who was charged by the complaint of one Jewett with burglariously entering the house of the said complainant, in the county of Douglas, in the night season, and with stealing therefrom jewelry and clothing of the value of $50. Upon said application a requisition was allowed, in pursuance of which a warrant was issued by the governor of Illinois for the apprehension of the relator, and upon which the latter was, on March 7, arrested and immediately thereafter conveyed to Douglas county, in this state, for trial. Having waived a preliminary hearing upon the charge mentioned, he was committed to the jail of said county, and on the 3d day of May an information was filed by the county attorney charging him with the identical offense specified in the extradition papers, to which he interposed a plea of not guilty and was remanded for trial. On the 20th day of June, 1895, the said relator,

without having had an opportunity to depart from this state, and without his consent, was taken before a magistrate in and for Douglas county and required to answer another and different charge, to-wit, of burglariously entering the house of one Thomas H. O'Neill and stealing therefrom jewelry of the value of $37.50, and upon which charge he was committed for trial. Afterward, during the May, 1895, term of the district court, an information was therein filed by the county attorney charging the relator with the last mentioned offense, and to which the latter, at a subsequent day of the term, entered a plea of not guilty, accompanied by an affidavit challenging the jurisdiction of the court over his person, in which the matters here stated are set out in detail. His objection to the jurisdiction of the court being overruled, a trial was had, resulting in a conviction of the offense charged in said information, and which judgment the respondent relies upon as a justification in this proceeding.

It is in the first place contended by the attorney general that, conceding the action complained of to be irregular, it is at most voidable, not affecting the jurisdiction of the district court, and that the relator's remedy is accordingly by direct proceeding to secure a review of the judgment of conviction. There appears to be no doubt of the soundness of that proposition, either upon reason or authority. The accused, in the language of the statute, "shall be taken to have waived all defects which may be excepted to by a motion to quash, or a plea in abatement, by demurring to an indictment, or pleading in bar, or the general issue." (Criminal Code, sec. 444.) The writ of *habeas corpus*, as said by this court in *State v.*

13

*Crinklaw*, 40 Neb., 759, "is not a corrective remedy, and is never allowed as a substitute for appeal or writ of error," and the same principle is distinctly recognized in *Ex parte Fisher*, 6 Neb., 309; *In re Betts*, 36 Neb., 282; *In re Havlik*, 45 Neb., 747.

But there exists a fundamental objection to this proceeding. The right of a demanding state, upon the surrender of a fugitive from justice, to try him upon a charge other than that specified in the extradition papers has long been the subject of judicial controversy. Arrayed on one side are cases which appear to rest upon the inherent justice of the claim that a court cannot acquire jurisdiction over the person of one accused of crime through the fraud, duplicity, or abuse of process by an officer or agent entrusted with the impartial administration of the law. On the other hand are cases holding that a fugitive surrendered by one state on the demand of another may, under the constitution and the laws of the United States, be prosecuted for any extraditable offense committed within the territorial jurisdiction of the latter, on the ground that there exists no right of asylum as applied to interstate extradition, and that it would be a useless and idle ceremony to return a fugitive to another state in order to again demand his surrender for trial. The constitutional provision upon the subject is found in section 2 of article 4 of the constitution of the United States, viz.: "A person charged in any state with treason, felony, or other crime, who shall flee from justice and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime." The acts of congress bearing upon

the subject (secs. 5278, 5279, Revised Statutes,
U. S.) are designed merely to carry into effect the
constitutional provision, without assuming to en-
large or restrict the rights of the several states
thereunder.   During every stage of the discussion
the courts have agreed substantially upon one
proposition, viz., that the subject involved is a
construction of the national constitution, and,
therefore, in its broadest sense, a federal question.
It is worthy of note, too, that until a compara-
tively recent date the diversity of opinion among
federal judges respecting the true interpretation
of the foregoing provision was no less radical
than existed between state courts.   But in *Las-
celles v. Georgia,* 148 U. S., 537, which was a writ of
error to the supreme court of the state of Georgia,
the subject was by the supreme court consid-
ered in all of its phases, and the conclusion an-
nounced fully sustained the power of the demand-
ing state to try a fugitive surrendered pursuant
to the constitution of the United States, for any
crime committed within its borders, whether
specified in the extradition warrant or not, and
that one so tried is not thereby deprived of any
rights, privileges, or immunities secured to him by
the constitution or laws of congress.   As that
case must be regarded as an authoritative con-
struction of the constitutional provision govern-
ing the subject, and binding alike upon state and
federal tribunals, we feel warranted in here quot-
ing at some length from the opinion of the court
by Mr. Justice Jackson: "But it is settled by the
decisions of this court that, except in the case of
a fugitive surrendered by a foreign government,
there is nothing in the constitution, treaties, or
laws of the United States which exempts an of-

fender, brought before the courts of a state, for an offense against its laws, from trial and punishment, even though brought from another state by unlawful violence or by abuse of legal process. (*Ker v. State of Illinois,* 119 U. S., 436; *Mahon v. Justice,* 127 U. S., 700; *Cook v. Hart,* 146 U. S., 183.)   *   *   *   To apply the rule of international or foreign extradition as announced in *United States v. Rauscher,* 119 U. S., 407, to interstate rendition involves the confusion of two essentially different things, which rest upon entirely different principles.   In the former the extradition depends upon treaty, contract, or stipulation, which rests upon good faith, and in respect to which the sovereign upon whom the demand is made can exercise discretion as well as investigate the charge on which the surrender is demanded, there being no rule of comity under and by virtue of which independent nations are required or expected to withhold from fugitives within their jurisdiction the right of asylum.   In the matter of interstate rendition, however, there is the binding force and obligation, not of contract, but of the supreme law of the land, which imposes no conditions or limitations upon the jurisdiction and authority of the state to which the fugitive is returned."

*In re Robinson,* 29 Neb., 135, has been cited as supporting the claim of the relator; but that contention is based upon apparent misconception of what is there decided, viz., that one forcibly and unlawfully carried into this state will not be held to answer to a criminal charge without an opportunity to return to the state from whence he is brought.   What is there said in regard to the right of the state to prosecute a fugitive regularly

extradited is mere *obiter*, and not intended as decisive of the question now before us.    To what extent that case is to be regarded as authority, when applied to the same or a similar state of facts, in view of the decision in *Lascelles v. Georgia*, is a question foreign to this controversy and does not call for notice.    It follows, however, that the writ must be denied and the relator remanded to the custody of the respondent.

WRIT DENIED.