OTHA DAVIS, APPELLANT, V. JOSEPH O'GRADY, WARDEN,
APPELLEE.

291 N. W. 82

FILED MARCH 22, 1940.   No. 30759.

*Otha Davis, pro se.*

*Walter R. Johnson, Attorney General,* and *George W. Ayres, contra.*

Heard before SIMMONS, C. J., ROSE, CARTER, MESSMORE and JOHNSEN, JJ., and ELLIS, District Judge.

PER CURIAM.

This is an appeal from a final order made in the district court for Lancaster county, upon a petition for a writ of habeas corpus presented thereto by Otha Davis, against Joseph O'Grady, warden of the Nebraska state penitentiary. Such order denied the issuance of the writ against the defendant, or any relief as in said petition prayed, for the reason "that the petition does not state a cause of action in favor of the petitioner or relator."

Included in relator's petition is a copy of an information filed against him in the district court for Howard county, Nebraska, by the duly elected, qualified, and acting county attorney of such county. It contained two counts. In the first count, in appropriate terms, Davis is charged with the crime of stealing, on or about the 4th day of November, 1936, 52 bushels and 10 pounds of wheat of the value of $56.85, the personal property of Mary Sack and Julius Iwanski. In the second count he is charged, in appropriate terms, with the crime of stealing, on or about the 25th day of November, 1936, 56 bushels and 10 pounds of wheat of the value of $64.03, the personal property of Mads Madsen. It is also alleged in each count of such information that the relator herein had twice, prior to each of the thefts charged therein, been convicted of theft, and had in each instance been sentenced to, and served a term in, the Nebraska state penitentiary; these allegations merely establishing his status as an habitual criminal on the dates of the commission of the offenses set forth in this information. It further appears in relator's petition that, after the filing of said information, the following proceedings were had in the district court for Howard county, Nebraska, viz.:

"Judgment.

"And, now, on this 15th day of December, 1936, the defendant being present in court in the custody of the deputy sheriff, and announced he was ready to plead to the information. Whereupon the information was read to the defendant by Charles Dobry, County Attorney of said county, and said defendant entered a plea of guilty. Statement of the defendant was taken. Defendant was thereupon asked if he has anything further to say why sentence should not be pronounced upon him, and he said he had not.

"It is therefore considered and adjudged by the court that the defendant be and he hereby is sentenced to the State Penitentiary at Lancaster, in Lancaster county, Nebraska, at hard labor, Sundays and Holidays excepted, for a period of ten (10) years, solitary confinement to be no part of this sentence.

"Edwin P. Clements, District Judge."

It further appears that the relator is now being held in the Nebraska state penitentiary in accordance with the foregoing sentence.

The relator challenges the validity of the habitual criminal statute of the state of Nebraska, section 29-2217, Comp. St. 1929, as in conflict with section 3, art. I, section 9, art. I, section 12, art. I, of the Constitution of Nebraska, and with article V and article VIII of the amendments to the Constitution of the United States. He also contends that the pretended judgment and sentence is null and void, in that it does not specify the offense of which petitioner was convicted, as required by section 20-1310, Comp. St. 1929; and as a final reason the relator alleges that he was not represented by counsel in the trial of his case.

This court is committed to the doctrines, viz.:

The legislature may enact an habitual criminal law punishing habitual offenders.

The habitual criminal law does not set out a distinct crime, but provides that the repetition of criminal conduct aggravates the guilt and justifies heavier penalties.

The fact that a defendant has been guilty of a second

felony does not make him guilty under the habitual criminal law of an offense for which he may be separately sentenced, but increases the punishment for the last felony.

"Habitual criminality" is, under the habitual criminal law, a state rather than a crime, and warrants greater punishment because of past conduct.

In the discussion of this question, Mr. Justice Hughes of the supreme court of the United States, in *Graham v. State of West Virginia*, 224 U. S. 616, 32 S. Ct. 583, 56 L. Ed. 917, employed the following language, viz.:

"The propriety of inflicting severer punishment upon old offenders has long been recognized in this country and in England. They are not punished the second time for the earlier offense, but the repetition of criminal conduct aggravates their guilt and justifies heavier penalties when they are again convicted. Statutes providing for such increased punishment were enacted in Virginia and New York as early as 1796, and in Massachusetts in 1804; and there have been numerous acts of similar import in many states. This legislation has uniformly been sustained in the state courts. *Ross's Case*, 2 Pick. (Mass.) 165, 170; *Plumbly v. Commonwealth*, 2 Met. (Mass.) 413, 415."

In *Kuwitzky v. O'Grady*, 135 Neb. 466, 282 N. W. 396, this court approved the following pronouncements, viz.:

"An habitual criminal statute is sound in principle and sustained by reason. The legislature may well enact such a law to permit law enforcement officers to take into consideration the persistence of an offender in his criminal course. That the defendant has been guilty of a second felony does not make him guilty of an offense for which he may be separately sentenced, but, upon proof that the habitual criminal statute applies to his case, he may have his punishment for the last felony of which he has been convicted increased as provided by law. 8 R. C. L. 271, secs. 284, 285; *Mundon v. State*, 196 Wis. 469, 220 N. W. 650; *State v. Zywicki*, 175 Minn. 508, 221 N. W. 900. Our Nebraska court has said: 'Where, under a prosecution for felony, the state seeks to have the accused punished as an

habitual criminal under section 10177, Comp. St. 1922, it is proper to allege in the information and prove upon the trial that the accused has been previously convicted as provided in said section.' *Taylor v. State,* 114 Neb. 257, 207 N. W. 207. See, also, *Booth v. State,* 122 Neb. 544, 240 N. W. 753.

"Provisions for increasing the punishment for habitual criminals are found in the laws of nearly every state. In a few states the law may be so phrased as to require the filing of a supplemental information to present an issue of fact to be determined by a jury, first, as to the identity of the defendant, and, second, as to his former conviction and the execution of the sentence. In other states it presents a question of fact for the purpose of increasing the length of the sentence which may be imposed upon conviction of the felony. The two annotations, of great length, found in 58 A. L. R. 20, and 82 A. L. R. 345, give an exhaustive discussion of the various phases of the question, with citations from the various states.

"The federal courts have often been called upon to pass upon these laws when applications have been made for writs of habeas corpus.

"In a recent case from the circuit court of appeals for the seventh circuit, the court used this language: 'Habitual criminality is a state, not a crime. * * * Habitual criminal statutes, such as that of Indiana, do not create or define a new or independent crime, but they prescribe circumstances wherein one found guilty of a specific crime may be more severely penalized because of his previous criminalities as they are alleged and found. This was definitely decided in *Barr v. State,* 205 Ind. 481, 187 N. E. 259. In *McDonald v. Massachusetts,* 180 U. S. 311, 21 S. Ct. 389, 390, 45 L. Ed. 542, the court, in considering a statute imposing greater punishment because of prior convictions for crimes, said: "The allegations of previous convictions is not a distinct charge of crimes, but is necessary to bring the case within the statute, and goes to the punishment only." ' *Goodman v. Kunkle,* 72 Fed. (2d) 334."

It is obvious that relator's contentions as to the invalidity

of the Nebraska habitual criminal statute cannot be sustained, and its validity must be upheld.

Nor, do we find relator's contention, that the judgment or sentence is null and void because it does not specify the offense for which relator was convicted, sustainable.

"Habeas corpus is a collateral, not a direct, proceeding, when regarded as a means of attack upon a judgment sentencing a defendant." *Hulbert v. Fenton*, 115 Neb. 818, 215 N. W. 104. See, also, *Alexander v. O'Grady*, *ante*, p. 645, 290 N. W. 718.

The judgment or sentence of a court of record in a criminal case is thus supported by the usual presumptions of validity and regularity when thus attacked. To obtain release from a sentence of imprisonment by habeas corpus, such sentence must be absolutely void. *Hulbert v. Fenton*, *supra; Michaelson v. Beemer*, 72 Neb. 761, 101 N. W. 1007; *In re Carbino*, 117 Neb. 107, 219 N. W. 846.

The relator cites no statute of this state requiring the judgment or sentence to specify the offense of which a person is convicted, and we have been unable to find any.

As applied to questions involved in habeas corpus proceedings, the true rule appears to be, viz.:

"Where an indictment charges distinct offenses in two or more counts it has been held that defendant cannot complain of a sentence on a general verdict which imposes punishment applicable to either offense without designating on which count it is based, because, it being impossible to say on which count the sentence applied, it would be held to apply to all." 16 C. J. 1282.

So also, "Upon a conviction of a defendant upon several counts charging distinct crimes, each complete in itself without reference to the other, the court may pass a separate and cumulative sentence on each count, or it may treat the conviction as for one crime, the highest charged, and may impose one legally appropriate penalty." 23 Standard Ency. of Procedure, 455.

Again, "A sentence and judgment upon an indictment containing several counts need not designate upon which

count it is based, unless statute requires it." 23 Standard Ency. of Procedure, 456.

We need not consider the question before us as though presented on appeal or by error. We are committed to the doctrine that habeas corpus is never allowed as a substitute for appeal or proceeding in error. *Hulbert v. Fenton, supra; Michaelson v. Beemer, supra.*

As to the failure of the trial court to provide relator with the services of an attorney, the rule appears to be, viz.:

"The constitutional right of accused to have the assistance of counsel may be waived, and a waiver will be implied where accused, being without counsel, fails to demand that counsel be assigned him." 16 C. J. 821.

So also, this court is committed to the view that, "A person charged with crime may, by a judicial confession of guilt, waive all the rights secured to him by section 11, article I of the Constitution." *McCarty v. Hopkins,* 61 Neb. 550, 85 N. W. 540. See, also, *Smythe v. State,* 124 Neb. 267, 246 N. W. 461.

It follows, therefore, that the final order of the district court for Lancaster county denying relief to the relator was correct, and it is

AFFIRMED.